THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM TODD LEE <br> 138 Santolina Park <br> Peachtree City, GA  30269 <br><br> *PLAINTIFF,* <br><br> v. <br><br> LIEUTENANT GENERAL JAMES R. HELMLY[1] <br> Chief, Army Reserve <br> Department of the Army <br> 120 Army Pentagon <br> Washington, DC  20310-1020 <br><br><br> *DEFENDANT.* | Civil Action No. |

## I. COMPLAINT

1. This action is brought pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 7513, and raises claims that the Defendant has violated Plaintiff's statutory rights and his right to due process of law under the Fifth Amendment to the United States Constitution. This action is based on the Defendant's refusal to provide Plaintiff documents to which he is lawfully entitled, and to provide Plaintiff a reasonable amount of time to respond to a notice of proposed removal from federal service. By separate motions, this action seeks injunctive relief against the Defendant.

---

[1] The President has nominated Major General Jack. C. Stultz to the position of Chief, Army Reserve. He will assume the role of Acting Chief, Army Reserve, on 19 May 2006, when LTG Helmly will leave command. Major General Stultz will then be substituted as defendant.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper because Defendant is a resident of the District of Columbia,

## III. PARTIES

3. William Todd Lee, Plaintiff, is a civilian employee of the United States Department of the Army, GS-15. He retired from the U.S. Army in the grade of Colonel (0-6). Colonel ("COL") Lee resides at the address provided in the caption above.

4. Lieutenant General ("LTG") James K. Helmly, Defendant, is Chief of the United States Army Reserve.

5. LTG Helmly's principal place of business is provided in the caption above. LTG Helmly is leaving his current position as of 19 May 2006.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On 3 May 2006, COL Lee received a notice of proposed removal from federal service.

7. The notice of proposed removal is based on the findings of an informal investigation conducted under Army Regulation 15-6. The Report of Investigation ("ROI") consists of nearly 3000 pages of documents, including information derived from more than 50 formal and informal witness interviews.  **Exhibit 1**.

8. Thousands of additional pages of documents were generated during the investigation but were not included in the ROI.  **Exhibit 2**.

9. The ROI contains anonymous witness statements that are adverse to COL Lee.  **Exhibit 3**.

10. The ROI references and relies on documents not contained in the ROI.  **Exhibit 3**.

2

11. By letters dated 3 May 2006, 5 May 2006, and 10 May 2006, COL Lee wrote MG Stultz requesting an extension of time in which to respond to the proposed removal. **Exhibit 4**.

12. By letter dated 8 May 2006, COL Lee wrote MG Stultz requesting that additional documents be provided. **Exhibit 5**.

13. By letters dated 4 May 2006, 8 May 2006, and 11 May 2006, MG Stultz, through legal counsel, denied COL Lee's requests. **Exhibit 6**.

14. COL Lee's statutory and constitutional challenges to the Defendant's non-disclosure of documents and failure to provide reasonable time in which to respond to the proposed removal may not be appealed to the Office of Special Counsel or the United States Merit Systems Protection Board, as such action is not a personnel action.

15. COL Lee therefore has exhausted his administrative remedies.

## V. STATEMENT OF FACTS

16. After the tragic events of 11 September 2001, COL Lee was mobilized to perform active duty in of the Office of the Chief, Army Reserve ("OCAR"). He arrived at the Pentagon to begin his duties on 17 September 2001.

17. COL Lee was mobilized to meet the OCAR requirement for round-the-clock staff supervision in the wake of those attacks, and because of his extensive prior experience in war planning and force integration activities.

18. COL Lee's official title during his mobilization period was Director of Staff. COL Lee shared that title with COL (ret) Terry W. Lerch. COL Lerch was aware of COL Lee's job title, and raised no objections or concerns about sharing the title with COL Lee.

19. In practice, COL Lee was "wartime" Director of Staff while COL Lerch served as "peacetime" Director of Staff. The division of staff supervision was as follows: COL Lee served

as Director of Staff for all non-administrative matters, principally for all activities in support of Operation Enduring Freedom. COL Lerch exercised staff supervision responsibilities for administrative matters.

20. While serving as Director of Staff, COL Lee was directly supervised by COL (ret.) Malcolm B. Westcott. COL Lee's second-line supervisor was LTG Thomas J. Plewes. During his period of mobilization, COL Lee performed numerous duties in addition to those required by the position of Director of Staff.

21. COL Lee also exercised supervisory duties when serving as Acting Executive Officer to the Chief, Army Reserve (January 2002 through May 2002), and Acting Chief, Army Reserve, a position he occupied on several occasions in the absence of the Chief, Army Reserve.

22. COL Lee exercised supervisory responsibilities that included tasking subordinate officers and civilians, monitoring their compliance with work directives, fielding questions, and giving advice. COL Lee performed these supervisory functions independent of Mr. Lerch.

23. COL Lee also performed these functions when Mr. Lerch was unavailable, and when required after official duty hours. COL Lee regularly tasked his staff without regard to his staff's peacetime rating chains.

24. After completing his one-year mobilization period in October 2002, COL Lee was retained on active duty for medical evaluation. He had suffered a heart attack during his mobilized service and had a number of other service-related medical conditions and disabilities that required evaluation prior to his retirement from the Army.

25. In January 2003, COL Lee was invited to accept the civilian position of Program Integrator, OCAR Chief Information Office (later named Enterprise Service Activity). On 22

March 2003, COL Lee reported to work at the Pentagon as Program Integrator. In September, 2003, the Army transferred COL Lee, along with his position, to Ft. McPherson, GA.

26. In December 2003, LTG James Helmly, Chief, Army Reserve, directed an investigation under AR 15-6 based on anonymous allegations that COL Lee unlawfully arranged his transfer to Ft. McPherson, received unauthorized TDY travel reimbursements, and improperly used his government cell phone. The scope of the investigation was later broadened to include all circumstances surrounding COL Lee's employment.

27. LTG Helmly selected as his investigating officer COL Patricia McDaniel, JA, USAR, a Reserve officer then mobilized and assigned to Ft. Hood, Texas. COL McDaniel commenced her investigation on 23 December 2003. She completed her report of investigation on 25 February 2004.

28. After reviewing the available evidence, COL McDaniel issued the following findings of fact: 1) COL Lee never actually performed the job that he was ostensibly hired to perform at OCAR; 2) COL Lee resided in Atlanta, GA from the outset of his employment notwithstanding the fact that he was ostensibly hired to work in Washington, DC and was paid for that location; 3) COL Lee misused his cell-phone and that misuse resulted in $1,028.25 improperly paid by the government; 4) COL Lee improperly traveled TDY to his permanent duty station with the approval of his supervisor, Mr. Arthur (Rick) Taylor; and 5) COL Lee misrepresented his qualifications on his "RESUMIX" resume, such qualifications being the determining factor for eligibility to serve at the GS-15 level.

**First Attempt to Terminate COL Lee's Employment**

29. Based on COL McDaniel's findings of fact, by memorandum dated 16 March 2004, BG James Kelley informed COL Lee that he intended to remove him from the position of Program Integrator and terminate his federal service employment.

30. BG Kelley cited two reasons for the proposed removal and termination: 1) COL Lee's alleged falsification of his resume; and 2) alleged misuse of government issued cell-phone. Only these allegations, therefore, constituted the basis for the proposed adverse actions.

31. In response to requests from COL Lee and his counsel for additional time to response to the proposed removal and termination, by memorandum dated 29 March 2004 BG Kelley withdrew and cancelled the 16 March 2004 notice.

32. According to BG Kelley, he took this action "[i]n the interest of affording [COL Lee] the opportunity to fully respond to the allegations and because your probationary period has expired....." In the same memorandum, BG Kelley again advised COL Lee that he was proposing COL Lee's removal and termination based on the same two grounds presented in the 16 March 2004 memorandum.

33. On 13 April 2004, COL Lee submitted to BG Kelley materials responding to the second notice of proposed removal and termination. Among those materials were sworn statements by his superior officer, COL Malcolm B. Westcott, and other officers who provided information that the finding that COL Lee falsified his resume was incorrect.

34. Defendant provided COL Lee 14 days to respond to the charges, which derived from an investigative record of 400 pages.

35. By memorandum dated 20 April 2004, BG Kelley informed COL Lee that his actions "do not warrant removal." BG Kelley maintained, however, that the charges of falsification of

resume information and misuse of a government cell-phone were supported by a preponderance of the evidence.

36. In the same communication, BG Kelley notified COL Lee that the following actions would be taken: 1) 14 day suspension from employment without pay; and 2) placement of a copy of Standard Form 50, "Notification of Personnel Action," in COL Lee's Official Personnel Folder. COL Lee was suspended from employment without pay from 2 May 2005 through 15 May 2005. COL Lee returned to duty on 17 May 2005.[2]

**ESA Financial Crisis**

37. On or about 20 June 2005, Mr. Rick Taylor, Director, Army Reserve Enterprise Services Activity ("ESA"), and COL Lee learned that ESA financial management officials had made at least $25,000,000.00 of unpaid commitments during the fiscal year, had pending commitments and obligations of over $10,000,000.00 for the remainder of the fiscal year, and had already exhausted all of its FY05 budgeted funds. Mr. Taylor brought the matter to the attention of LTG Helmly, Chief, Army Reserve.

38. On 22 June 2005, COL Lee and Major Eric Allee traveled to the Pentagon where they briefed LTG Helmly on the situation. At LTG Helmly's direction, fund commitment authority was withdrawn from ESA (except for those ESA members assigned to the Office of the Chief, Army Reserve ("OCAR")).

39. On or around 27 June 2005, the Resource Manager (RM) of ESA, Mr. George McClure, was detailed to the United States Army Reserve Command ("USARC") G8.

---

[2] On 9 May 2006, Mr. Lee filed a claim in this Court for the amendment of his personnel records under the Privacy Act. *See Lee v. Harvey*, Case No. 1:06-cv-884. The averments and information contained therein are incorporated into this complaint by reference.

40. By memorandum dated 30 June 2005, LTG Helmly appointed, under Army Regulation 15-6, an Investigating Officer (IO) to conduct an informal investigation of ESA's operations, size, structure, and organization.

41. The IO, MG Thomas J. Matthews, also was directed to investigate the circumstances surrounding ESA's financial crisis, which threatened to undermine vital, ongoing ESA activities. LTG Helmly did not designate COL Lee or anyone else as a subject or suspect in the investigation.

42. Concurrently, USARC entities began conducting audits of ESA financial transactions and management processes. During the conduct of these three efforts (15-6, IR and G8 audits), COL Lee determined that key individuals in ESA financial management, namely Mr. George McClure, the former RM, and Ms. Annie Mills, Purchasing Officer (also referred to as the Information Management Officer- IMO), continued to enjoy unrestricted access to ESA financial records. They were observed several times working together, behind closed doors, on what appeared to be ESA purchasing, receiving and contract records.

43. On several occasions, from 30 June 2005 through 24 August 2005, COL Lee advised the Army Reserve Chief of Staff, the G8, the Chief of Internal Review, the Staff Judge Advocate, the IO and other senior Army Reserve officials that the command should secure all ESA financial records and establish positive control over their access by Mr. McClure and Ms. Mills. COL Lee took no direct action to accomplish this task because of the independent authority of the Investigating Officer, IR, and the G8 auditors.

44. After no action was taken to secure the ESA financial records, by electronic mail dated on or about 14 July 2005, COL Lee informed MG Matthews and BG Anderson (MG Kelley's replacement as Chief of Staff) that Mr. Bruce Smith, USARC, personally had informed

him that he suspected unlawful activity on the part of the ESA financial management officials. In the same communication, COL Lee recommended that the command turn the investigation over to an outside agency such as the Army Criminal Investigation Division. No such action was taken.

45. Mr. McClure and Ms. Mills continued to be observed working together on what appeared to be ESA records, even after COL Lee had reported the activity to the command.

46. On or about 23 August 2005, after several earlier recommendations, COL Lee formally requested (by electronic mail) that BG Anderson, the Army Reserve Chief of Staff, arrange for the informal investigation, be passed to an outside agency.

47. COL Lee did not believe the command, particularly LTG Helmly, BG Anderson, and COL Phillips, was approaching the matter in an independent, impartial, or professional manner. COL Lee specifically was concerned that those officers were acting in violation of their legal duties to properly investigate potential criminal activity and preserve all evidence related to such activity.

48. In addition to the disclosures COL Lee directly made to generals Matthews and Anderson, on three prior occasions he had disclosed similar and related concerns to the USARC Inspector General and the Department of Defense Inspector General.

49. By e-mail dated 28 May 2005, COL Lee disclosed to COL Beverly Ertman, IG, USARC, evidence demonstrating that LTG Helmly and others in the USARC command were unlawfully manipulating Army Reserve officer assignments to obtain officer promotions for favored individuals.

50. In response, COL Ertman advised COL Lee that she was taking no action on his disclosure and referred the matter to the Army Human Resources Command, St. Louis, MO.

HRC--St, Louis never notified COL Lee that it had received or acted on his complaint. COL Lee also raised this issue with to the Department of Defense Inspector General.

51. By letter dated 13 September 2005, COL Lee again raised this and other issues related to this appeal with the Department of Defense Inspector General. While the Department of Defense Inspector General declined to investigate Mr. Lee's allegations of whistleblower reprisal due to manpower shortages, COL Lee was orally informed that his remaining allegations were being considered by the Inspector General.

52. By letter dated 6 January 2006, the Department of the Army Inspector General wrote COL Lee, stating that his complaint regarding the unlawful promotion of Reserve officers had been referred back to the USARC IG for appropriate action. The Department of the Army Inspector General also determined that the remainder of COL Lee's allegations and disclosures were not appropriate for IG investigation.

53. COL Lee's concerns about the potentially unlawful conduct of Mr. McClure and Ms. Mills were entirely reasonable. COL Lee and other senior ESA staff members repeatedly struggled to obtain accurate and timely financial information from Mr. McClure and Ms. Mills about vital ESA matters.

54. The difficulties in obtaining timely and accurate financial information from Mr. McClure and Ms. Mills were of serious concern to COL Lee and other ESA staff members, and preceded the revelation of ESA's financial crisis.

55. Shortly after the June 2005 revelation of the funding shortfall, COL Lee was informed by Lieutenant Colonel Steve March that Mr. McClure had officially certified payment of $8,900,000.00 to a major contractor, QSS.

56. Mr. McClure was required by law to certify by his signature that the obligated funds were available. In fact, there were insufficient funds to cover the payment. COL Lee believed that Mr. McClure acted in violation of Army and Department of Defense regulations, federal statute, and his fiduciary duties as Resource Manager.

57. COL Lee had additional reasons to be concerned about the propriety of Mr. McClure's and Ms. Mills' conduct. Army Reserve auditors had earlier commented (personally, to COL Lee) that Mr. McClure did not employ proper "separation of responsibility" controls in the performance of his duties.

58. USARC Staff members had also informed COL Lee that Mr. McClure personally had signed receiving documents for equipment he had funded and Ms. Mills had ordered, without apparent knowledge of senior ESA management. The USARC staff members reported that some of these items now cannot be located. In the conduct of their audits, ESA, G8, and IR personnel also uncovered what appeared to be evidence of improperly approved IT purchases, with amounts running into the millions of dollars.

59. On 29 August 2005, only six days after his recommendation that the 15-6 investigation be transferred to the CID or the DOD IG, BG Anderson, the Army Reserve Chief of Staff, placed COL Lee on involuntary "administrative leave." The stated justifications for this action were: (1) "To allow for the completion of the ongoing AR 15-6 investigation; and (2) "My concern over your ability, under current circumstances, to meet the core functions of the position you currently occupy in ESA."

60. BG Anderson further stated that the leave period was for 30 calendar days, "or until terminated or extended by me." In the same communication, BG Anderson stated, "I have decided to adjust the effective date for transfer of authority of the Enterprise Services Activity

(ESA) from the planned date of 1 October 2005 to today. Effective immediately, ESA is now under the authority and control of the USAR G2/6. Because Mr. Taylor is on convalescent leave and his return to duty date is unknown, COL Charles Phillips, USAR G2/6, will serve as the Acting Director of ESA."

61. By memorandum dated 26 October 2005, BG Anderson extended COL Lee's "administrative leave" indefinitely.

62. Additional agency actions simultaneously taken against Mr. Lee included the following: (1) sealing his office door with tape and placing a notice on the door prohibiting entry; (2) preventing him from accessing his official Army Reserve/ESA and Army Knowledge Online electronic mail accounts; (3) banning him from the USARC and ESA physical premises; (4) instructing COL Lee's colleagues to have no communication with COL Lee; (5) permitting rumors to circulate among ESA and USARC staff that COL Lee had been arrested and led away in handcuffs; (6) suspending his security clearance; and (7) preventing COL Lee from accessing official records and other information that he might use in defense against personnel actions.

63. Most, if not all, of these actions were announced in a public forum of agency employees that included COL Lee's subordinates, colleagues, and co-workers.

64. COL Lee subsequently was informed that his office had been opened and entered, and numerous documents removed, on the authority of someone other than BG Anderson or COL Phillips. The pretext for this action was that certain civilian performance appraisals were removed to ensure that they would not be delayed by COL Lee's or Mr. Taylor's absence.

65. By removing the performance appraisals from the control of COL Lee and Mr. Taylor, it was inevitable that they would be prepared and signed by someone other than the rater or senior rater of record.

66. Notably, three of these appraisals were for personnel with direct involvement in the resource management process of ESA—Ms. Felicia Batte, head of the ESA Programming, Budgeting and Execution Functions ("PPBES"), Mr. McClure, and Ms. Mills. Mr. Taylor was in the rating chain for each of those individuals. COL Lee was Ms. Mills' rater and was assisting Mr. Taylor in preparing all three appraisals. COL Lee was very reasonably concerned, therefore, that those appraisals would be fabricated.

67. COL Lee formally objected to the USAR's imposition of extended involuntary administrative leave, which now is approaching 9 months. His requests to return to duty were denied and his request for restoration of his Army e-mail account was never answered.

68. On 18 January 2006, COL Lee filed a complaint with the Department of the Army alleging discrimination based on race, age, sex, and disability.

69. On 26 February 2006, MG Matthews submitted his Report of Investigation ("ROI") to LTG Helmly.

70. On 18 March 2006, LTG Helmly approved all findings and recommendations made by MG Matthews in his ROI.

71. On 19 April 2006, COL Lee filed an Individual Right of Action with the U.S. Merit Systems Protection Board alleging reprisal for his whistleblower activities.

72. By letter dated 28 April 2006, BG Oscar R. Anderson, Chief of Staff, USARC, informed COL Lee of his proposal to remove him from federal service.

73. On 30 April 2006, Mr. Lee received a copy of the ROI, which contains nearly 3,000 pages and comprises six binders.

74. By letters dated 3 May 2006, 5 May 2006, and 10 May 2006, COL Lee wrote MG Stultz requesting an extension of time in which to respond to the proposed removal.

75. By letter dated 8 May 2006, COL Lee wrote MG Stultz requesting that additional documents be provided.

76. By letter dated 4 May 2006, MG Stultz granted COL Lee an extension of five days.

77. By letters dated 8 May 2006, and 11 May 2006, MG Stultz denied COL Lee's additional requests for documents and a further extension of time.

78. MG Stultz has granted COL Lee a meeting of 30 minutes duration, on 18 May 2006, in which to present his defense. That is the date on which his defense submission currently is due.

## VI. **LEGAL CLAIMS**

### 1. **Violation of Due Process**

79. Paragraphs 1-78 are incorporated herein by reference.

80. The Fifth Amendment to the United States Constitution provides that no one shall be deprived of life, liberty, or property without due process of law.

81. In the administrative context, the due process required is that of notice and an opportunity to comment.

82. What constitutes adequate notice and response varies according to the facts and circumstances of a particular case, and the nature of the action being taken.

83. The Defendant's granting of only 15 days for COL Lee to respond to the proposed removal violates the requirements of the Fifth Amendment.

84. The Defendant's refusal to provide COL Lee with the additional documents he requested violates the requirements of the Fifth Amendment.

### 2. **Violation of 5 U.S.C. § 7513(b)**

85. Paragraphs 1-78 are incorporated herein by reference.

86. 5 U.S.C. § 7513(b) provides that: "An employee against whom an action is proposed is entitled to— (1) at least 30 days' advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action; (2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer…."

87. Fifteen days is not a reasonable time for COL Lee to answer orally and in writing, and to furnish affidavits and other documentary evidence in his defense of the proposed removal.

88. The Defendant's refusal to grant COL Lee an extension of time of at least 30 days violates 5 U.S.C. § 7513(b)(2).

## PRAYER FOR RELIEF

WHEREFORE, COL Lee prays that this court grant the following relief:

(1) Order Defendant to grant COL Lee an extension of at least 45 days to respond orally and in writing to the proposed removal, from the date of this Court's order;

(2) Order other equitable and statutory relief that this Court deems appropriate;

(4) Award to COL Lee, against Defendant, payment of all costs and reasonable attorney fees incurred in this action.

Respectfully submitted,

/s/

Raymond J. Toney (Bar No. NY0066)
*Attorney for Plaintiff*

The Law Office of Raymond J. Toney
34-16 30th Avenue, Third Floor
Astoria, NY 11103
Tel: 718-726-3656  Fax: 718-504-4735
E-mail: rjtoney@rjtlaw.net