## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WILLIAM TODD LEE<br>138 Santolina Park<br>Peachtree City, GA 30269<br><br>*PLAINTIFF,*<br><br>v.<br><br>LIEUTENANT GENERAL JAMES K. HELMLY<br>Chief, Army Reserve<br>Department of the Army<br>120 Army Pentagon<br>Washington, DC 20310-1020<br><br><br>*DEFENDANT.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTIONS FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

### I. REQUESTED ACTION

Plaintiff, William Todd Lee, respectfully requests that the Court issue a temporary restraining order ("TRO") restraining Defendant from acting on the proposed removal of COL Lee from federal service until this Court has decided his motion for a preliminary injunction, and a preliminary injunction enjoining Defendant from the same until the Court decides COL Lee's underlying legal claims.

### II. JURISDICTION

This Court has jurisdiction to grant a TRO under Fed. R. Civ. P. 65(b). Jurisdiction to grant a preliminary injunction is conferred on this Court by Fed. R. Civ. P. 65(a).

## III. **STATEMENT OF FACTS**

COL Lee is a retired Army Colonel (0-6). He presently serves with the Army Reserve Enterprise Service Activity ("ESD"), located in Peachtree City, Georgia. He is a GS-15 with nearly four years of civilian federal service.

After the tragic events of September 11, 2001, COL Lee was mobilized to perform active duty in of the Office of the Chief, Army Reserve ("OCAR"). He arrived at the Pentagon to begin his duties on September 17, 2001, six days after the terrorist attacks of September 11, 2001. COL Lee was mobilized to meet the OCAR requirement for round-the-clock staff supervision in the wake of those attacks, and because of his extensive prior experience in war planning and force integration activities.

COL Lee's official title during his mobilization period was Director of Staff. COL Lee shared that title with COL (ret) Terry W. Lerch. COL Lerch was aware of COL Lee's job title, and raised no objections or concerns about sharing the title with COL Lee. In practice, COL Lee was "wartime" Director of Staff while COL Lerch served as "peacetime" Director of Staff. The division of staff supervision was as follows: COL Lee served as Director of Staff for all non-administrative matters, principally for all activities in support of Operation Enduring Freedom. COL Lerch exercised staff supervision responsibilities for administrative matters.

While serving as Director of Staff, COL Lee was directly supervised by COL (ret.) Malcolm B. Westcott. COL Lee's second-line supervisor was LTG Thomas J. Plewes. During his period of mobilization, COL Lee performed numerous duties in addition to those required by the position of Director of Staff. COL Lee also exercised supervisory duties when serving as Acting Executive Officer to the Chief, Army Reserve (January 2002 through May 2002), and  Acting

Chief, Army Reserve, a position he occupied on several occasions in the absence of the Chief, Army Reserve.

COL Lee exercised supervisory responsibilities that included tasking subordinate officers and civilians, monitoring their compliance with work directives, fielding questions, and giving advice. COL Lee performed these supervisory functions independent of Mr. Lerch. COL Lee also performed these functions when Mr. Lerch was unavailable, and when required after official duty hours. COL Lee regularly tasked his staff without regard to his staff's peacetime rating chains.

After completing his one-year mobilization period in October 2002, COL Lee was retained on active duty for medical evaluation. He had suffered a heart attack during his mobilized service and had a number of other service-related medical conditions and disabilities that required evaluation prior to his retirement from the Army.

In January 2003, COL Lee was invited to accept the civilian position of Program Integrator, OCAR Chief Information Office (later named Enterprise Service Activity). On 23 March 2003, COL Lee reported to work at the Pentagon as Program Integrator. In September, 2003, the Army transferred COL Lee, along with his position, to Fort McPherson, GA.

**First AR 15-6 Investigation**

In December 2003, LTG James Helmly, Chief, Army Reserve, directed an investigation under AR 15-6 based on anonymous allegations that COL Lee unlawfully arranged his transfer to Ft. McPherson, received unauthorized TDY travel reimbursements, and improperly used his government cell phone. The scope of the investigation was later broadened to include all circumstances surrounding COL Lee's employment.

LTG Helmly selected as his investigating officer COL Patricia McDaniel, JA, USAR, a Reserve officer then mobilized and assigned to Ft. Hood, Texas. COL McDaniel commenced her investigation on 23 December 2003. She completed her report of investigation on 25 February 2004.

After reviewing the available evidence, COL McDaniel issued the following findings of fact: 1) COL Lee never actually performed the job that he was ostensibly hired to perform at OCAR; 2) COL Lee resided in Atlanta, GA from the outset of his employment notwithstanding the fact that he was ostensibly hired to work in Washington, DC and was paid for that location; 3) COL Lee misused his cell-phone and that misuse resulted in $1,028.25 improperly paid by the government; 4) COL Lee improperly traveled TDY to his permanent duty station with the approval of his supervisor, Mr. Arthur (Rick) Taylor; and 5) COL Lee misrepresented his qualifications on his "RESUMIX" resume, such qualifications being the determining factor for eligibility to serve at the GS-15 level.

**First Attempt to Terminate COL Lee's Employment**

Based on COL McDaniel's findings of fact, by memorandum dated March 16, 2004, BG James Kelley informed COL Lee that he intended to remove him from the position of Program Integrator and terminate his federal service employment. BG Kelley cited two reasons for the proposed removal and termination: 1) COL Lee's alleged falsification of his resume; and 2) alleged misuse of government issued cell-phone. Only these allegations, therefore, constituted the basis for the proposed adverse actions. COL Lee was afforded 14 days to respond to the allegations, which derived from an investigative record of 400 pages.

In response to requests from COL Lee and his counsel for additional time to response to the proposed removal and termination, by memorandum dated 29 March 2004, BG Kelley

withdrew and cancelled the 16 March 2004 notice. According to BG Kelley, he took this action "[i]n the interest of affording [COL Lee] the opportunity to fully respond to the allegations and because your probationary period has expired....." In the same memorandum, BG Kelley again advised COL Lee that he was proposing COL Lee's removal and termination based on the same two grounds presented in the March 16, 2004 memorandum.

On 13 April 2004, COL Lee submitted to BG Kelley materials responding to the second notice of proposed removal and termination. By memorandum dated 20 April 2004, BG Kelley informed COL Lee that his actions "do not warrant removal." BG Kelley maintained, however, that the charges of falsification of resume information and misuse of a government cell-phone were supported by a preponderance of the evidence. In the same communication, BG Kelley notified COL Lee that the following actions would be taken: 1) 14 day suspension from employment without pay; and 2) placement of a copy of Standard Form 50, "Notification of Personnel Action," in COL Lee's Official Personnel Folder. COL Lee was suspended from employment from 2 May 2005 through 15 May 2005. COL Lee returned to duty on 17 May 2005.[1]

**ESA Financial Crisis**

On or about 20 June 2005, Mr. Rick Taylor, Director, Army Reserve Enterprise Services Activity ("ESA"), and Plaintiff learned that ESA financial management officials had made at least $25,000,000.00 of unpaid commitments during the fiscal year, had pending commitments and obligations of over $10,000,000.00 for the remainder of the fiscal year, and had already exhausted all of its FY05 budgeted funds. Mr. Taylor brought the matter to the attention of Lieutenant General ("LTG") James K. Helmly Chief, Army Reserve.

---

[1] On 9 May 2006, COL Lee filed a claim in this Court for the amendment of his personnel records under the Privacy Act. *See Lee v. Harvey*, Case No. 1:06-cv-884.

On 22 June 2005, COL Lee and Major Eric Allee traveled to the Pentagon where they briefed LTG Helmly on the situation. At LTG Helmly's direction, fund commitment authority was withdrawn from ESA (except for those ESA members assigned to the Office of the Chief, Army Reserve ("OCAR")). On or around 27 June 2005, the Resource Manager (RM) of ESA, Mr. George McClure, was detailed to the United States Army Reserve Command ("USARC") G8.

**Second AR 15-6 Investigation**

By memorandum dated 30 June 2005, LTG Helmly appointed, under Army Regulation 15-6, an Investigating Officer ("IO") to conduct an informal investigation of ESA's operations, size, structure, and organization. The IO, Major General ("MG") Thomas J. Matthews, also was directed to investigate the circumstances surrounding ESA's financial crisis, which threatened to undermine vital, ongoing ESA activities. LTG Helmly did not designate COL Lee or anyone else as a subject or suspect in the investigation.

Concurrently, United States Army Reserve Command ("USARC") entities began conducting audits of ESA financial transactions and management processes. During the conduct of these efforts, COL Lee determined that key individuals in ESA financial management, namely Mr. George McClure, the former RM, and Ms. Annie Mills, Purchasing Officer (also referred to as the Information Management Officer- IMO), continued to enjoy unrestricted access to ESA financial records. They were observed several times working together, behind closed doors, on what appeared to be ESA purchasing, receiving and contract records.

On several occasions, from 30 June 2005 through 24 August 2005, COL Lee advised the Army Reserve Chief of Staff, the G8, the Chief of Internal Review, the Staff Judge Advocate, the IO and other senior Army Reserve officials that the command should secure all ESA financial

records and establish positive control over their access by Mr. McClure and Ms. Mills. COL Lee took no direct action to accomplish this task because of the independent authority of the Investigating Officer, IR, and the G8 auditors.

After no action was taken to secure the ESA financial records, by electronic mail dated 14 July 2005, COL Lee informed MG Matthews and Brigadier General ("BG") Anderson (MG Kelley's replacement as Chief of Staff) that Mr. Bruce Smith, USARC, personally had informed COL Lee  that he suspected unlawful activity on the part of the ESA financial management officials. In the same communication, COL Lee recommended that the command turn the investigation over to an outside agency such as the Army Criminal Investigation Division. No such action was taken. Mr. McClure and Ms. Mills continued to be observed working together on what appeared to be ESA records, even after COL Lee had reported the activity to the command.

On or about 23 August 2005, after several earlier recommendations, COL Lee  formally requested (by electronic mail) that BG Anderson, the Army Reserve Chief of Staff, arrange for the informal investigation, be passed to an outside agency. COL Lee did not believe the command, particularly LTG Helmly, BG Anderson, and COL Phillips, was approaching the matter in an independent, impartial, or professional manner. COL Lee specifically was concerned that those officers were acting in violation of their legal duties to properly investigate potential criminal activity and preserve all evidence related to such activity.

In addition to the disclosures COL Lee directly made to generals Matthews and Anderson, on three prior occasions he had disclosed similar and related concerns to the USARC Inspector General and the Department of Defense Inspector General. By e-mail dated 28 May 2005, COL Lee disclosed to COL Beverly Ertman, IG, USARC, evidence demonstrating that LTG Helmly and others in the USARC command were unlawfully manipulating Army Reserve

officer assignments to obtain officer promotions for favored individuals. In response, COL Ertman advised COL Lee that she was taking no action on his disclosure and referred the matter to the Army Human Resources Command, St. Louis, MO. HRC--St, Louis never notified COL Lee that it had received or acted on his complaint. COL Lee also raised this issue with to the Department of Defense Inspector General.

By letter dated 13 September 2005, COL Lee again raised this and other issues with the Department of Defense Inspector General. While the Department of Defense Inspector General declined to investigate COL Lee's allegations of whistleblower reprisal due to manpower shortages, COL Lee was orally informed, through counsel, that his remaining allegations were being considered by the Inspector General.

By letter dated 6 January 2006, the Department of the Army Inspector General wrote COL Lee, stating that COL Lee's complaint regarding the unlawful promotion of Reserve officers had been referred back to the USARC IG for appropriate action. The Department of the Army Inspector General also determined that the remainder of COL Lee's allegations and disclosures were not appropriate for IG investigation.

Shortly after the June 2005 revelation of the funding shortfall, COL Lee was informed by Lieutenant Colonel Steve March that Mr. McClure had officially certified payment of $8,900,000.00 to a major contractor, QSS. Mr. McClure was required by law to certify by his signature that the obligated funds were available. In fact, there were insufficient funds to cover the payment. COL Lee believed, and continues to believe, that Mr. McClure acted in violation of Army and Department of Defense regulations, federal statute, and his fiduciary duties as Resource Manager.

COL Lee had additional reasons to be concerned about the propriety of Mr. McClure's and Ms. Mills' conduct. G8 auditors had earlier commented (personally, to COL Lee) that Mr. McClure did not employ proper "separation of responsibility" controls in the performance of his duties. USARC Staff members had also informed COL Lee that Mr. McClure personally had signed receiving documents for equipment he had funded and Ms. Mills had ordered, without apparent knowledge of senior ESA management. The USARC staff members reported that some of these items now cannot be located. In the conduct of their audits, ESA, G8, and IR personnel also uncovered what appeared to be evidence of improperly approved IT purchases, with amounts running into the millions of dollars.

On 29 August 2005, only six days after his recommendation that the 15-6 investigation be transferred to the CID or the DOD IG, BG Anderson, the Army Reserve Chief of Staff, placed COL Lee on involuntary "administrative leave." The stated justifications for this action were: (1) "To allow for the completion of the ongoing AR 15-6 investigation; and (2) "My concern over your ability, under current circumstances, to meet the core functions of the position you currently occupy in ESA."

BG Anderson further stated that the leave period was for 30 calendar days, "or until terminated or extended by me." In the same communication, BG Anderson stated, "I have decided to adjust the effective date for transfer of authority of the Enterprise Services Activity (ESA) from the planned date of 1 October 2005 to today. Effective immediately, ESA is now under the authority and control of the USAR G2/6. Because Mr. Taylor is on convalescent leave and his return to duty date is unknown, COL Charles Phillips, USAR G2/6, will serve as the Acting Director of ESA." By memorandum dated 26 October 2005, BG Anderson extended COL Lee's "administrative leave" indefinitely.

Additional agency actions simultaneously taken against COL Lee included the following: (1) sealing his office door with tape and placing a notice on the door prohibiting entry; (2) preventing him from accessing his official Army Reserve/ESA and Army Knowledge Online electronic mail accounts; (3) banning him from the USARC and ESA physical premises; (4) instructing COL Lee's colleagues to have no communication with COL Lee; (5) permitting rumors to circulate among ESA and USARC staff that COL Lee had been arrested and led away in handcuffs; (6) suspending his security clearance; and (7) preventing COL Lee from accessing official records and other information that he might use in defense against personnel actions. Most, if not all, of these actions were announced in a public forum of agency employees that included COL Lee's subordinates, colleagues, and co-workers.

COL Lee subsequently was informed that his office had been opened and entered, and numerous documents removed, on the authority of someone other than BG Anderson or COL Phillips. The pretext for this action was that certain civilian performance appraisals were removed to ensure that they would not be delayed by COL Lee's or Mr. Taylor's absence.

By removing the performance appraisals from the control of COL Lee and Mr. Taylor, it was inevitable that they would be prepared and signed by someone other than the rater or senior rater of record. Notably, three of these appraisals were for personnel with direct involvement in the resource management process of ESA—Ms. Felicia Batte, head of the ESA Programming, Budgeting and Execution Functions ("PPBES"), Mr. McClure, and Ms. Mills. Mr. Taylor was in the rating chain for each of those individuals. COL Lee was Ms. Mills' rater and was assisting Mr. Taylor in preparing all three appraisals. COL Lee was very reasonably concerned, therefore, that those appraisals would be 'fabricated.'

COL Lee formally objected to the USAR's imposition of extended involuntary administrative leave, which now is approaching 9 months. His requests to return to duty were denied and his request for restoration of his Army e-mail account was never answered. On 18 January 2006, COL Lee filed a complaint with the Department of the Army alleging discrimination based on race, age, sex, and disability.

On 26 February 2006, MG Matthews submitted his report of investigation to LTG Helmly. On 18 March 2006, LTG Helmly approved all findings and recommendations made by MG Matthews in his ROI. On 19 April 2006, COL Lee filed and Individual Right of Action with the U.S. Merit Systems Protection Board alleging reprisal for his whistleblower activities.

By letter dated 28 April 2006, BG Oscar R. Anderson, Chief of Staff, USARC, informed COL Lee of his proposal to remove him from federal service. As partial justification for the proposed action, BG Anderson stated, "I have considered your employment record, including the fact that you have approximately three years of Federal civilian service to your credit. I also have considered your previous record of discipline. You were suspended for 14 days in May 2004 for falsification of your resume in your job application and misuse of government resources. Your conduct has resulted in a complete loss of trust in you."

On 30 April 2006, COL Lee received a copy of the ROI, which contains nearly 3,000 pages and comprises six binders. The ROI contains information derived from more than 50 formal and informal witness interviews. The ROI contains 10 findings against COL Lee specifically. It contains summarized statements by witnesses that are adverse to COL Lee, yet contains no documents identifying the witnesses or what precisely they stated. In the ROI, the IO references and relies on a "Sensing Survey" of ESA, yet the ROI does not include the survey results.

By letters dated 3 May 2006, 5 May 2006, and 10 May 2006, Plaintiff wrote MG Stultz requesting an extension of time in which to respond to the proposed removal. By letter dated 8 May 2006, Plaintiff wrote MG Stultz requesting that additional documents be provided. Counsel for the Defendant, Mr. Andrew D. Stewart, stated in his responsive letter that "[o]ur procedure only requires that you be provided that [sic] materials relied upon in making the proposed discipline decision. The AR 15-6 investigation was the only information relied upon. That has been provided to you." In response to COL Lee's request for all documents generated by the AR 15-6 investigation, the Freedom of Information Act officer for USARC informed COL Lee that an additional 10,000 pages of documents were generated by the AR 15-6 investigation.

By letter dated 4 May 2006, MG Stultz granted COL Lee an extension of five days. By letters dated 8 May 2006, and 11 May 2006, MG Stultz denied Plaintiff's additional requests for documents and a further extension of time. MG Stultz has granted COL Lee a meeting of <u>30 minutes duration</u>, on 18 May 2006, in which to present his defense to his proposed removal from federal service. That is the same day COL Lee's response is due.

## **STANDARD OF REVIEW**

In considering a motion for a temporary restraining order or a preliminary injunction, this Court is required to consider four factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury were an injunction not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest. *Al Fayed v. Central Intelligence Agency*, 254 F.3d 300, 303 (D.C. Cir. 2001). *See also TGS Technology, Inc., v. Department of the Air Force*, 1992 U.S. Dist. Lexis 195.

This Court employs a balancing approach to the four factors, wherein "[t]he Court must balance the moving party's claims against the position of the nonmovant in each of these four areas and may issue an injunction if one factor is particularly strong, even though the remaining criteria are weak." *Public Utility District v. Federal Energy Regulation Commission*, 270 F. Supp. 2d 1, 6-7 (D.C.D.C. 2003). To obtain injunctive relief, the moving party must show some injury, and the failure to demonstrate irreparable harm "is alone sufficient to deny a motion for a preliminary injunction...." *Id.* at 7.

## IV. ARGUMENT

### 1. Substantial Likelihood of Success on the Merits

As applied to the proposed removal of non-probationary, competitive service federal employees, the Due Process Clause of the Fifth Amendment requires notice and an opportunity to comment. *Arnett v. Kennedy*, 416 U.S. 134 (1974). The essential requirements of due process, and all that respondents seek or the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Board of Education v Loudermill*, 470 U.S. 532, 546 (1985).

In this case, the specific process due is codified in 5 U.S.C. § 7513(b).That provision provides as follows: "(b) An employee against whom an action is proposed is entitled to-- (1) <u>at least 30 days' advance written notice</u>, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action; (2) <u>a reasonable time, but not less than 7 days</u>, to

answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer; (3) be represented by an attorney or other representative; and (4) a written decision and the specific reasons therefore at the earliest practicable date." (Emphasis added.)

An agency's failure to adhere to these provisions in affecting an employee's removal constitutes harmful error "because an employee's ability to defend is impaired and the outcome before the agency is affected." *Hall v. United States Postal Service*, 26 M.S.P.R. 233, 237 (1985). "Section 7513(b) of 5 U.S.C. provides that an employee against whom an action is proposed is entitled to at least 30 days advance written notice of the charges. This requirement is designed to afford the employee an opportunity to defend against the proposed charges. The entitlement of employees to advance specific notice of the charges and the opportunity to answer them before a final agency decision is made are fundamental procedural rights." *Hodnick v. Federal Mediation and Conciliation Service*, 8 M.S.P.R. 508, 510 (1981). An employee's right in replying to an agency is that of making an informed reply. "The right to make an informed reply at the agency level is granted in order to attempt to resolve the dispute before irreversible positions are taken and further proceedings become necessary." *Id.*

There are very few decided cases specifically addressing the "reasonable time" requirement of 5 U.S.C. § 7513(b). In one such case, *Boyle v. United States*, 207 Ct. Cl. 27 (1975), Boyle alleged that he was not afforded an opportunity to reply to his July 31, 1971 Notice of Proposed Removal. *Id.* at 37. The court considered the allegation under 5 U.S.C. § 7501 (1970) and 5 C.F.R. 752.202(b) (1974), both of which provide for a "reasonable time" for filing a written answer to the charges. *Id.*

Boyle's Notice of Proposed Removal afforded him 13 days in which to respond. *Id.* Boyle then asked the Department of Defense General Counsel to invalidate the notice of

removal, and informed the Responsible Management Official ("RMO") that "he was postponing his response to the proposed removal until the General Counsel acted." *Id.* The RMO informed Boyle that his request to the General Counsel did not toll the response deadline. *Id.* Boyle did not respond by the deadline established. *Id.* The court concluded, "[i]n view of these circumstances, we are compelled to conclude that plaintiff was given ample time and reasonable opportunity to challenge his proposed removal. *Id.* 37-38.

In *Gordon v Bright*, 306 F. Supp. 252 (W.D. OK 1968), the plaintiff was removed from his position of Electronic Technician, GS-11, Aeronautical Center, Federal Aviation Administration. *Id.* at 253. Prior to his removal, the plaintiff had received prior warnings about his performance of duties. *Id.* at 254. The plaintiff alleged, *inter alia*, that "because of the technical complexity of the charges against him and the highly technical content thereof he was not given a reasonable time for preparation and submission of his reply thereto." *Id.* at 255.

The court stated, "[t]his contention is devoid of merit for several reasons." *Id.* The court first noted that the proposed removal notice afforded the plaintiff an opportunity to respond in person and in writing, or both, and provided 15 days in which to do so. *Id.* The court further noted that the notice of proposed removal stated that "[c]onsideration will be given to extending this date if you submit a request stating your reasons for desiring more time to prepare your answer." *Id.*

In rejecting the plaintiff's argument, the court stated, "[i]t is true that the charges were complex and highly technical but since plaintiff did not request an extension of time to answer same and since he had been down the road at least twice before, I hold that the time allotted for answering the charges was adequate or at least not unreasonable under the circumstances in this case. In addition to the foregoing, the files reflect on March 9, 1966, plaintiff requested further

details on the charges brought against him which request was complied with on March 10, 1966. Plaintiff could just as easily have requested an extension of time to answer but failed to do so." *Id.* at 255-256.

*Money v. Wallen*, 88 F. Supp. 980 (E.D. PA. 1950), the court found that the time of 3 days in which to respond to the charges contained in a notification of removal. *Id.* at 981. In so ruling the court noted, "[h]e was entitled to a copy of the charges, which he received, and to be allowed a reasonable time to answer in writing together with supporting affidavits. The time given in the notice of charges was three days, and he actually made answer in writing within that time. This in light of all the surrounding circumstances, particularly in view of the fact that he had been orally presented with substantially the same charges some six days prior to formal presentation of written charges, we consider a reasonable time." *Id.* There is nothing in *Money* indicating that the charges were complex or that extensive documentation provided the basis for the plaintiff's removal.

COL Lee's claim is readily distinguishable from the foregoing cases. In contrast to *Boyle* and *Money*, COL Lee's claim is complex and requires the review of nearly 3000 pages of documents. In contrast to *Gordon*, a case factually closer to COL Lee's claim, the court found a 15 day response time "adequate, or at least not unreasonable under the circumstances in this case." 306 F. Supp. 255-256. Crucially, however, the plaintiff had not submitted a request for an extension of time, even though he was invited to do so. Moreover, unlike in COL Lee's case, the plaintiff's request for additional details was favorably considered by the defendant. The court further noted that the plaintiff was familiar with the charges against him as he had "been down the road at least twice before." 306 F. Supp. 255-256.

In contrast, Defendant provided COL Lee with no information concerning his performance of duties prior to the issuance of the notice of proposed removal. And as noted above, Defendant had given COL Lee an exceptional performance appraisal for the year prior, and had awarded Mr. Lee an annual pay increase in March 2006, the requirement for such increase being at least satisfactory performance in the most recent appraisal period.

COL Lee can conceive of no legitimate reason for Defendant's refusal to grant him an extension of time and provide him the additional documents he requested. Under the circumstances of this case, 15 days cannot be considered reasonable time in which to respond. It simply is impossible for COL Lee and his legal counsel to review the voluminous evidence contained in the ROI, analyze that evidence, draft a memorandum in response to the evidence and charges, and obtain affidavits from witnesses who also must review the pertinent evidence.

Based on the foregoing, COL Lee demonstrates a strong likelihood of success on the merits of his underlying claim of statutory and constitutional violations. This criterion for the issuance of injunctive relief therefore is satisfied.

## 2. Irreparable Injury

If the injunctive relief requested is not granted, COL Lee will suffer irreparable injury. First, appellate remedies available to COL Lee if he is removed are not substitutes for the due process requirements of a fair and reasonable opportunity to defend against the allegations in the first instance. Second, if COL Lee is removed without enjoying his right to due process of law, he will be forced to incur additional legal expenses in the litigation of his claims on appeal. Third, his personal and professional reputations largely will be destroyed. He will have been fired from a civil service position as a GS-15. Even if successful on the appeal against his removal, COL Lee nonetheless would incur extremely serious injury to his personal and

professional reputations. Fourth and finally, if the injunctive relief is not granted, COL Lee will suffer heightened anxiety and mental stress given the unfairness to him of Defendant's procedures and the increased likelihood that he will be terminated.

**Violation of Due Process**

If injunctive relief is not granted, COL Lee will be required to present his defense on 18 May 2006 without enjoying an opportunity to review all documents upon which the removal is based, and without reasonable time to review and respond to the documents presently available, and obtain the necessary affidavits from witnesses. His defense, necessarily, will be limited, and significantly reduced will be his chances of defeating the proposed removal on the merits.

As the Ninth Circuit has noted, "[o]nce the termination order is entered, the record tends to become unalterable and opinions of a give and take character become hardened and difficult if not impossible to come by. The decision of the reviewing officer up the ladder can easily be more influenced by the decisions that have already been made and what decision-makers have made them than by a careful analysis to detect and uproot any injustice in the proceedings before." *Albert v. Chafee*, 571 F.2d 1063, 1067 (9th Cir. 1977).

In preparing his defense, COL Lee must carefully analyze and cross-reference the nearly 3000 pages of documents presently available to him. He must consider each and every witness statement quoted and/or referenced that contains information adverse to him. He must go to the witness statements themselves and consider the accuracy of the quotations and references, as well as the context in which the utilized statements were made. He must review and analyze the volumes of documents that are not witness statements but that are used to support the charges against him.

COL Lee also must have witnesses favorable to him review pertinent ROI materials and prepare affidavits in response. COL Lee has identified approximately 9 individuals who were interviewed by the IO, and who are in a position to prepare affidavits. Those individuals are employed full-time and many have family obligations as well. Defendant cannot reasonably expect the witnesses to complete their review of the documents and prepare affidavits within the allotted time. Fifteen days simply is insufficient time for COL Lee to accomplish the many tasks required for an effective response to the proposed removal. Indeed, as noted above, Defendant gave COL Lee 14 days to respond to their first proposed removal. The investigation on which that effort was based contained only 400 pages of documents.

**Additional Legal Expenses**

COL Lee has invested a significant amount of money in defense of the first proposed removal and the current one. If the injunctive relief is not granted, the probability that he will be terminated increases. If terminated, COL Lee will appeal the decision to the MSPB where significant additional legal expenses would be required to litigate the matter. COL Lee will be required to pursue the documents denied to him by Defendant through discovery and/or requests under the Privacy Act and Freedom of Information Act.

**Damage to Reputation**

COL Lee's personal and professional reputations have been severely tarnished because of the circumstances surrounding his involuntary administrative leave. As noted in the statement of facts, Defendant placed blue tape on his office door, posted a sign prohibiting entry, instructed ESA staff not to communicate with COL Lee, terminated his e-mail accounts, and banned him from the ESA and USARC facilities.

If COL Lee is removed from federal service, his reputation will be destroyed. COL Lee will have no prospects of obtaining employment in his current areas of expertise, whether with the government or a private entity. Indeed, employment outside his areas of expertise will also be extremely difficult to obtain. COL Lee will have to explain the circumstances surrounding his termination to future employers, whether government or civilian. Given the nature of today's professional marketplace, COL Lee will be at a gross competitive disadvantage.

**Emotional Distress**

While not wholly unexpected, given Defendant's previous attempt to remove him from service, Defendant's current proposed removal of COL Lee has caused him, quite naturally, heightened anxiety and stress. COL Lee is working diligently within the allotted time to review the ROI, provide documents to witnesses, obtain witness statements, and assist counsel in the preparation of his memorandum in response.

Defendant's refusal, however, to provide COL Lee reasonable time to prepare his response, and to provide him all documents upon which the action is based, has exacerbated the normal stress and anxiety associated with a removal action. Defendant's actions have led COL Lee to conclude that Defendant are rushing the process in order to avoid a repeat of the first removal attempt, where COL Lee was given an extension of time to prepare his defense, and succeeded in defeating the action. This conclusion has compounded COL Lee's stress and anxiety, as he knows that he will be unable to adequately defend himself within the allotted time. He further understands that if he is not afforded the process due to him, he will face what is certain to be a long and costly appeals process.

### 3. Injury to Defendant

COL Lee has been on paid administrative leave since 29 August 2006. Defendant took some 9 months to complete the AR 15-6 investigation that led to COL Lee's proposed removal. COL Lee's office has sat empty for the entire period of his administrative leave, and his duties and responsibilities were transferred to other individuals. His continued absence from ESA therefore will have no bearing on any aspect of Defendant's operations.

Given these facts and circumstances, COL Lee can conceive of no reason for Defendant's refusal to grant him sufficient time to prepare his response and provide him with the documentation which he requires to prepare his response. Nor can he conceive of any injury that would result to Defendant from this Court's granting of injunctive relief, beyond the fact that he would continued to be paid during the period of his challenge to the proposed removal

### 4. Public Interest

The public has a compelling interest in ensuring that government officials respect the laws of Congress and the rights provided individuals by the U.S. Constitution. The public interest has an equally compelling interest in ensuring that federal employees accused of ineffective performance of duties and, as here, misconduct (COL Lee's alleged falsification of his resume and misuse of government resources), enjoy their rights under federal law in defending themselves against the accusations.

The public also has a compelling interest in ensuring that government is administered effectively and efficiently. That interest certainly includes the disciplining of federal employees who impede the effective operation of government. Expeditious removal of an unsatisfactory employee is a legitimate public interest.

COL Lee submits that the interest is a legitimate one only when disciplinary actions are taken into accordance with applicable federal laws. When compared with the great importance of ensuring that constitutional rights of citizens are respected, Defendant's interest in the expeditious removal of COL Lee must be deemed less compelling.

## CONCLUSION

Based on the foregoing, COL Lee respectfully requests that his motions for a temporary restraining and a preliminary injunction be granted.

Respectfully submitted,

Raymond J. Toney (Bar No. NY0066)
*Attorney for Plaintiff*

The Law Office of Raymond J. Toney
34-16 30th Avenue, Third Floor
Astoria, NY 11103
Tel: 718-726-3656  Fax: 718-504-4735
E-mail: rjtoney@rjtlaw.net